IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**EASTON COURTNEY MURRAY,**
*Appellant.*


**STATE OF ARIZONA,**
*Appellee,*

*v.*

**CLAUDIUS C. MURRAY,**
*Appellant.*


No. CR-19-0368-PR
CR-20-0008-PR
(Consolidated)
Filed March 18, 2021


Appeal from the Superior Court in Pima County
The Honorable James E. Marner, Judge
Nos.  CR20170096-001; CR20170096-002
REVERSED AND REMANDED


Opinion of the Court of Appeals, Division Two
247 Ariz. 447 (App. 2019)
Filed October 4, 2019
VACATED


Opinion of the Court of Appeals, Division Two
247 Ariz. 583 (App. 2019)
Filed December 5, 2019
VACATED

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Michael O'Toole, Chief Counsel, Criminal Appeals Section, Linley Wilson (argued), Assistant Attorney General, Phoenix, Amy Thorson, Assistant Attorney General, Attorneys for State of Arizona

Amy P. Knight (argued), Knight Law Firm LLC, Tucson, Attorney for Easton Courtney Murray

Carol Lamoureux (argued), Joshua F. Hamilton, Law Office of Hernandez & Hamilton PC, Tucson, Attorneys for Claudius C. Murray

Kathleen E. Brody, Molly Brizgys, Mitchell Stein Carey Chapman PC, Phoenix; and David J. Euchner, Erin K. Sutherland, Pima County Public Defender's Office, Deputy Public Defender, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

―――――――――

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, GOULD, BEENE and MONTGOMERY joined.

―――――――――

JUSTICE LOPEZ, opinion of the Court:

¶1      We consider whether a prosecutor's single misstatement of the reasonable-doubt standard during a rebuttal argument constitutes fundamental, prejudicial error. Applying the fundamental error paradigm set forth in *State v. Escalante*, 245 Ariz. 135 (2018), we conclude that the prosecutor's material misstatement of the reasonable-doubt standard was both fundamental and prejudicial error because it went to the foundation of the case and deprived Defendants of an essential right. Accordingly, because on this record neither the court's jury instructions nor the presumption that the jury followed their instructions cured the prejudice, we vacate the court of appeals' decisions and remand these consolidated cases for new trials.

## BACKGROUND

¶2        In December 2016, brothers Easton Murray ("Easton") and Claudius Murray ("Claudius") went to the apartment of O.C., a friend and Claudius's former roommate.  Claudius carried a rifle, and Easton held a black bag.  According to O.C.'s trial testimony, the brothers asked O.C. to store something for them.  O.C., believing the bag contained marijuana, refused and asked them to leave.  Easton insulted O.C., pulled a Taser from his pocket, and shocked O.C.

¶3        O.C. testified that, as he grabbed Easton, Claudius tried to free Easton from O.C.'s grasp, leading to a melee outside the apartment door.  Easton then told Claudius to "shoot him, shoot the boy."  Easton spoke in Jamaican Patois, the three men's native language.  Claudius, who was less than six feet away, then shot O.C. in the leg.  O.C. retreated into his apartment as Easton and Claudius fled.  O.C. was taken to a hospital, where he was treated for a gunshot wound.  O.C.'s neighbor testified that—although he could not understand what the men were saying—he saw two men attempt to force their way into O.C.'s apartment and heard a scuffle, an argument in a foreign language, and multiple gunshots.

¶4        Following the shooting, police searched O.C.'s apartment and discovered an eight-pound bale of marijuana, scales, cell phones, and packing and shipping materials.  O.C. testified at trial that he did not own the marijuana, that Defendants stored their marijuana in his apartment, and that Defendants had previously placed the scales and the shipping and packaging items there.  Police also located a shell casing outside O.C.'s apartment, which they determined was fired from Claudius's rifle.

¶5        The State charged Easton and Claudius with aggravated assault and the brothers' cases were consolidated.  At the trial, O.C., who spoke Jamaican Patois and was the sole witness to the shooting, testified about the altercation's details.  O.C.'s neighbor's testimony generally corroborated O.C.'s account.  Easton and Claudius did not testify.  However, Defendants' counsel highlighted inconsistencies in O.C.'s testimony, as well as his purported motive to testify in exchange for immunity from drug charges and the State's assistance in delaying his deportation.

¶6        During his closing argument, the prosecutor highlighted the court's reasonable-doubt instruction, explaining that reasonable doubt "is

a firmly convinced standard" that imposes "a high burden of proof." Following the defense's closing arguments, the prosecutor delivered his rebuttal argument, including the following explication of the reasonable-doubt standard, which is the crux of this case:

> So here is how to think when you might hear somebody say back there, well, I think one or both defendants might be guilty but I'm not sure it's beyond a reasonable doubt. Now, stop and ask yourself another question at that point. Why did I just say that? Why did I just say that I think the defendants might be guilty? You are a fair and impartial juror. If you are thinking that, if you are saying that, is it not proof that you have been persuaded by the evidence in the case beyond a reasonable doubt? Because why else would you say that were you not convinced by the State's evidence? So when you hear yourself say that, ask yourself the second question why, why do I think he is guilty? Because he is guilty because you have been convinced by the State's case beyond a reasonable doubt. That's why you think as you do being fair and impartial.

¶7 Defense counsel did not object to the prosecutor's statement, nor did the court comment on or correct it. The court did, however, instruct the jury to "review the written instructions," which included a correct reasonable-doubt charge; remind them that they "must follow the instructions and refer to them to answer any questions about applicable law, procedure and definitions"; and advise that, during closing arguments, "[w]hat the lawyers say is not evidence, but it may help you understand the law and the evidence."

¶8 The jury convicted Defendants of aggravated assault and sentenced both to five years' imprisonment. Claudius and Easton separately appealed, alleging (among other things) that the prosecutor's statements about the reasonable-doubt standard constituted fundamental, prejudicial error.

¶9 The court of appeals affirmed Claudius and Easton's convictions in separate panel decisions. *State v.* (*Claudius C.*) *Murray*, 247 Ariz. 583, 597 ¶ 49 (App. 2019) (upholding Claudius's conviction); *State v.* (*Easton C.*) *Murray*, 247 Ariz. 447, 459 ¶ 39 (App. 2019) (upholding Easton's conviction). Each panel held that the prosecutor's statement about the reasonable-doubt standard did not constitute fundamental, prejudicial

error. (*Claudius C.*) *Murray*, 247 Ariz. at 596–97 ¶ 46; (*Easton C.*) *Murray*, 247 Ariz. at 457–58 ¶ 34. In Easton's case, however, Judge Eckerstrom filed a partial dissent, finding fundamental, prejudicial error. (*Easton C.*) *Murray*, 247 Ariz. at 464 ¶ 61 (Eckerstrom, J., dissenting in part).

**¶10** Defendants separately appealed to this Court. We granted review and consolidated these cases to determine the applicable standard of review when a prosecutor makes a single but material misstatement of the reasonable-doubt standard, without objection, during rebuttal argument. This is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶11** A prosecutor's misstatement of the reasonable-doubt standard, to which a defendant fails to object, implicates both fundamental error review, *see Escalante*, 245 Ariz. at 138 ¶ 1, and review for prosecutorial error or misconduct, *see State v. Vargas*, 249 Ariz. 186, 188 ¶ 1 (2020). As an initial matter, we note the extant confusion concerning the interplay between fundamental error review and review for prosecutorial misconduct. *See, e.g.*, *Vargas*, 249 Ariz. at 189 ¶ 11 ("[W]e note that cases addressing similar claims based on prosecutorial misconduct have not presented a consistent framework for review."). Although we recently clarified the proper fundamental error review applicable to allegations of *cumulative* prosecutorial misconduct in *Vargas*, we have yet to do so for an allegation of a *single instance* of prosecutorial misconduct. This is the task before us.

## I.

**¶12** Defendants contend that the prosecutor's misstatement of the reasonable-doubt standard constitutes prosecutorial misconduct. We agree. We briefly pause here, however, to clarify our finding of prosecutorial misconduct. "The term 'prosecutorial misconduct' broadly encompasses *any conduct* that infringes a defendant's *constitutional rights*. It sweeps in prosecutorial conduct ranging from inadvertent error or innocent mistake to intentional misconduct." *In re Martinez*, 248 Ariz. 458, 469 ¶ 45 (2020) (emphasis added). The characterization of the prosecutorial misconduct makes no difference to our ultimate decision in this case, but it makes a world of difference to the prosecutor by whom the error was committed. *See id.* at 470 ¶ 47 ("When reviewing the conduct of prosecutors

5

in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation."). Here, we find that the prosecutor's misstatement of the reasonable-doubt standard, although noteworthy, is better characterized as inadvertent error rather than intentional misconduct. There is no evidence in the record that the prosecutor's actions were designed to infringe Defendants' rights. We note, however, that prosecutors should heed the lesson that dilution of the reasonable-doubt standard may have consequences for the outcomes of their cases, and potentially their standing with the Bar.

¶13 Turning to the inquiry here, "[t]o prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335 ¶ 46 (2007) (quoting *State v. Hughes*, 193 Ariz. 72, 79 ¶ 26 (1998)) (internal quotation marks omitted). To that end, a defendant must demonstrate that "(1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *Id.* (quoting *State v. Anderson* (*Anderson II*), 210 Ariz. 327, 340 ¶ 45 (2005)). "If [the defendant] objected, then the issue is preserved for review under the standard articulated in *Anderson II*." *Id.* ¶ 47 (internal citations omitted).

¶14 If a defendant does not object to alleged prosecutorial misconduct, as here, the claim is subject to fundamental error review. *Id.*; *Escalante*, 245 Ariz. at 138 ¶ 1. Step one of fundamental error review is "determining whether trial error exists." *Escalante*, 245 Ariz. at 142 ¶ 21. If error does exist, step two requires us to "decide whether the error is fundamental." *Id.* Error is fundamental if it goes to the foundation of a case, takes away an essential right, or is so egregious that a defendant could not have received a fair trial. *Id.* at 141–42 ¶¶ 18–21. The three-pronged fundamental error test provides that "[i]f the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice [under step three]," but "[i]f the defendant establishes the third prong, he has shown both fundamental error and prejudice, and a new trial must be granted." *Id.* at 142 ¶ 21. At step three, prejudice is proven by showing that, without the fundamental error, "a reasonable jury . . . *could have* reached a different [verdict]." *Id.* at 144 ¶ 29 (quoting *State v. Henderson*, 210 Ariz. 561, 569 ¶ 27 (2005)) (internal quotation marks

6

omitted). At each step, "[t]he defendant bears the burden of persuasion." *Id.* at 142 ¶ 21.

**¶15** Thus, the prosecutorial misconduct inquiry is consistent with—if not subsumed within—*Escalante*'s framework for fundamental error review. Indeed, the first step in the prosecutorial misconduct inquiry is akin to *Escalante*'s first step. *Compare Morris*, 215 Ariz. at 335 ¶ 46 (explaining that the first step of review for prosecutorial misconduct is showing the existence of misconduct), *with Escalante*, 245 Ariz. at 142 ¶ 21 ("[T]he first step in fundamental error review is determining whether trial error exists."). The second step in the prosecutorial misconduct inquiry also is similar to *Escalante*'s prejudice requirement. *Compare Morris*, 215 Ariz. at 335 ¶ 46 (explaining that the second step of prosecutorial misconduct review is demonstrating a reasonable likelihood that the misconduct could have affected the jury's verdict), *with Escalante,* 245 Ariz. at 144 ¶ 29 (stating that fundamental error is prejudicial if, absent the misconduct, a reasonable jury could have reached a different verdict).

**¶16** Critically, *Escalante*'s prejudice prong is difficult to satisfy, *Escalante,* 245 Ariz. at 144 ¶ 31, and is a higher burden to overcome than in the inquiry conducted for objected-to prosecutorial misconduct, *see Morris*, 215 Ariz. at 335 ¶ 47 (explaining that when prosecutorial misconduct is objected to, the court evaluates prejudice under the prosecutorial misconduct standard, but when the defense fails to object at trial, the court reviews "*only* for fundamental error" (emphasis added)). Thus, if a defendant can satisfy *Escalante*'s heightened prejudice prong, he has necessarily also satisfied the prosecutorial misconduct prejudice inquiry. *See Vargas*, 249 Ariz. at 190 ¶ 13 ("Consistent with the third [step] of *Escalante*, a defendant claiming cumulative error based on prosecutorial misconduct need not separately assert prejudice since a successful claim necessarily establishes the unfairness of a trial."). Consequently, we hold that *Escalante*'s fundamental error review paradigm is the appropriate framework to assess whether a prosecutor's single, unobjected-to misstatement of the reasonable-doubt standard warrants a new trial.

## II.

**¶17** We next apply fundamental error review to the prosecutor's misstatement of the reasonable-doubt standard to determine (1) whether it constitutes prosecutorial error; (2) if so, whether the error was fundamental; and (3) if fundamental, whether the error was prejudicial.

**A.**

¶18        "[T]he first step in fundamental error review is determining whether trial error exists." *Escalante*, 245 Ariz. at 142 ¶ 21.   Although "[p]rosecutors are given 'wide latitude' in presenting closing argument to the jury," *State v. Goudeau*, 239 Ariz. 421, 466 ¶ 196 (2016) (quoting *State v. Comer*, 165 Ariz. 413, 426 (1990)), their prerogative to argue their version of the evidence does not sanction a misstatement of law, *State v. Serna*, 163 Ariz. 260, 266 (1990).

¶19        Here, the prosecutor's alleged error centers on his explication of the reasonable-doubt standard during his rebuttal argument, in which he invited jurors to conclude that if they thought "one or both defendants *might be guilty*," then they must have been "persuaded by the evidence in the case *beyond a reasonable doubt*."  (Emphasis added).  The prosecutor's novel "might be guilty" articulation of the reasonable-doubt standard radically departs from the requisite "firmly convinced" standard.  *See State v. Portillo*, 182 Ariz. 592, 596 (1995) ("Proof beyond a reasonable doubt is proof that leaves you *firmly convinced* of the defendant's guilt."(emphasis added)); *see also Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993) ("It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty . . . .").  The prosecutor's "might be guilty" dilution of the reasonable-doubt standard is an even lower bar than the "probably guilty" mischaracterization rejected in *Sullivan*.  To conflate the reasonable-doubt standard with a belief that Defendants "might be guilty," as the prosecution did here, unquestionably relieved the prosecution of its constitutionally required burden.  This misstatement of the law satisfies the first step of the *Escalante* fundamental error analysis because it plainly constitutes prosecutorial error.

**B.**

¶20        We next decide if the prosecutor's error in misstating the reasonable-doubt standard was fundamental.  *Escalante*, 245 Ariz. at 142   ¶ 21.  We consider the "totality of the circumstances" to determine "whether the error is fundamental."   *Id.*   "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial."   *Id.*   As a disjunctive test, a defendant need only establish one prong to prove fundamental error exists.  *Id.* at 140 ¶ 16.  "If

the defendant establishes the third prong, he has shown both fundamental error and prejudice," and we need not move on to the third step of fundamental error review because "a new trial must be granted." *Id.* at 142 ¶ 21. Although "[a] bright-line standard is inadvisable" because "the prongs often overlap, and their application depends on fact-intensive inquiries," *id.* at 141 ¶ 17, we will evaluate each prong in turn because we believe our clarity on this issue will benefit our courts.

**1.**

**¶21**        "An error generally goes to the 'foundation of a case' if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Id.* ¶ 18.

**¶22**        The Constitution requires that the government prove to a jury every criminal charge beyond a reasonable doubt. *See United States v. Haymond*, 139 S. Ct. 2369, 2376 (2019). We clarified nearly three decades ago what the reasonable-doubt standard requires:

> Proof beyond a reasonable doubt is *proof that leaves you firmly convinced of the defendant's guilt.* There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty. *If, on the other hand, you think there is a real possibility that he/she is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty.*

*Portillo*, 182 Ariz. at 596 (quoting Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 (Instruction 21) (1987)) (emphasis added). A conviction by a lower standard of proof is constitutionally infirm. *Sullivan*, 508 U.S. at 278 (noting that "the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated" and concluding that "[i]t would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty"). Indeed, the government's burden to prove "guilt beyond a reasonable doubt . . . is a requirement and a safeguard of due process of

law." *In re Winship*, 397 U.S. 358, 362 (1970) (quoting *Leland v. Oregon*, 343 U.S. 790, 802–03 (1952) (Frankfurter, J., dissenting)).

**¶23** Here, the prosecutor's invitation for the jury to conclude that its belief that Defendants "might be guilty" equated to a determination of guilt beyond a reasonable doubt impermissibly circumvented the requisite finding of "firmly convinced of the defendant's guilt." As noted, *supra* ¶ 19, the "might be guilty" standard is even lower than the insufficient "probably guilty" standard rejected in *Sullivan*. In fact, the "might be guilty" standard fails even to satisfy the standard in civil cases. *See Portillo*, 182 Ariz. at 596 ("In civil cases, it is only necessary to prove that a fact is *more likely true than not* or that its truth is *highly probable*." (emphasis added) (quoting Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 (Instruction 21) (1987))). Indeed, it would be remarkable if jurors commenced deliberations without an impression that a defendant "might be guilty" given the State's burden to support its charge with probable cause and the court's refusal to grant a directed verdict. Consequently, because the prosecutor's misstatement of the reasonable-doubt standard relieved the State of its constitutionally required burden to prove all elements of its case beyond a reasonable doubt, Defendants have established the first prong of fundamental error. *See Escalante*, 245 Ariz. at 141 ¶ 18.

**2.**

**¶24** "An error takes away an 'essential right' if it deprives the defendant of a constitutional or statutory right necessary to establish a viable defense or rebut the prosecution's case." *Id.* ¶ 19. As discussed, *supra* ¶ 22, the requirement that the State prove its criminal case beyond a reasonable doubt is a bedrock constitutional principle enshrined in the Fifth and Sixth Amendments and the right to due process.

**¶25** Here, the prosecution's case was built primarily on the testimony of O.C., a witness with assailable credibility. The defense strategy was to impeach O.C.'s credibility, thereby raising sufficient juror doubt to foreclose a unanimous jury finding of Defendants' guilt beyond a reasonable doubt. By inviting the jury to circumvent the reasonable-doubt standard and consequently undermining Defendants' constitutional rights and safeguards, the prosecutor deprived Defendants of an "essential right" necessary to rebut the State's case. Consequently, Defendants have established the second prong of fundamental error. *See Escalante*, 245 Ariz. at 141 ¶ 19.

**3.**

**¶26**        "An error so egregious that a defendant could not possibly have received a fair trial encompasses either or both prongs one and two. But to satisfy prong three, the error must so profoundly distort the trial that injustice is obvious without the need to further consider prejudice." *Id.* ¶ 20. Thus, a finding of fundamental error under this prong stops the inquiry, and we need not move on to evaluating prejudice in step three. *Id.* ¶ 21.

**¶27**        The gravity of a prosecutor's dilution of the reasonable-doubt standard, a bedrock principal of our justice system, is self-evident. In his dissent, Judge Eckerstrom opined that "[b]ecause the reasonable-doubt standard is the lens through which the jury must consider each item of evidence presented, a distortion of that standard can pervasively infect the fairness of a criminal trial." (*Easton C.*) *Murray*, 247 Ariz. at 460 ¶ 44 (Eckerstrom, J., dissenting in part). The Supreme Court has also noted the systemic prejudice inherent in adulteration of the reasonable-doubt standard. *See Sullivan*, 508 U.S. at 281 ("But the essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, *which vitiates all the jury's findings*." (emphasis added)). Indeed, few errors may so profoundly distort a criminal trial. *Cf. State v. VanWinkle*, 229 Ariz. 233, 236 ¶ 12 (2012) ("The prosecution may not comment on a defendant's exercise of his right to remain silent.").

**¶28**        Grave as this error may be, we decline to decide whether Defendants have satisfied the third prong of fundamental error here because we wish to provide guidance on applying *Escalante*'s prejudice prong to a single instance of prosecutorial misconduct. Thus, we next decide if the prosecutor's fundamental error in misstating the reasonable-doubt standard prejudiced Defendants.

**C.**

**¶29**        As an initial matter, we note the court of appeals' divergent approaches to fundamental error review in these cases, particularly in the prejudice inquiry. The majority in (*Easton C.*) *Murray* required Defendant to show "a reasonable likelihood . . . that the misconduct could have affected the jury's verdict," borrowing from the prosecutorial misconduct

standard. 247 Ariz. at 454 ¶ 18 (quoting *Morris*, 215 Ariz. at 335 ¶ 46). Conversely, the dissent required a showing that "but for the [prosecutor's] error, the jury 'could have reached a different result,'" using *Escalante*'s prejudice standard. *Id.* at 460 ¶ 46 (Eckerstrom J., dissenting in part) (quoting *Escalante*, 245 Ariz. at 144 ¶ 32). In (*Claudius C.*) *Murray*, however, the court of appeals relied heavily upon the presumption that juries follow instructions and, because of what it considered "binding precedent" of this Court, concluded that it could not say that "the [S]tate's misstatement of law resulted in fundamental error requiring reversal." 247 Ariz. at 596–97 ¶ 46.

**¶30** As noted, *supra* ¶ 16, *Escalante* provides the appropriate standard for this inquiry. Accordingly, Defendants are required to show that, without the prosecutor's mischaracterization of the reasonable-doubt standard, "a reasonable jury could have plausibly and intelligently returned a different verdict." *Escalante*, 245 Ariz. at 144 ¶ 31. "[T]he amount of error-free evidence supporting a guilty verdict is pertinent to that inquiry." *Id.* ¶ 34 (citing *State v. Ramos*, 235 Ariz. 230, 237 ¶ 20 (App. 2014)). In applying this standard, "an appellate court should examine the entire record, including the parties' theories and arguments as well as the trial evidence." *Id.* ¶ 31.

**¶31** Here, the prosecutor's improper argument—equating "might be guilty" with proof beyond a reasonable doubt—went to the foundation of the defense, whose strategy hinged on exploiting O.C.'s credibility issues. First, O.C. conceded that he received immunity from prosecution in exchange for his testimony and that the State interceded with federal authorities to delay his deportation. Second, O.C. testified that the drug contraband in his apartment belonged solely to Defendants and denied his own involvement in drug trafficking—a claim that the State's lead detective characterized as defying "common sense." Third, although O.C. previously told police that Easton had a rifle, O.C. testified for the first time at trial that Easton had "tased" him, even though police never found a Taser in Easton's possession. Fourth, O.C. admitted that he did not recall if he ever placed his hand on the rifle during the scuffle preceding his shooting "because everything was moving so fast," an admission Defendants used to suggest the shooting may have been accidental or inadvertently self-inflicted. These inconsistencies in O.C.'s statements, coupled with the admittedly self-interested nature of his testimony, rendered him susceptible to a credibility challenge—a problem that the reasonable-doubt standard would only exacerbate for the prosecution given O.C.'s centrality to the case.

¶32 Against this evidentiary backdrop, the prosecutor diluted the reasonable-doubt standard during his rebuttal argument when his words—the last ones the jury heard from the parties—would be most impactful. To compound the problem, Defendants failed to object, and the court did not correct the prosecutor's misstatement of the reasonable-doubt standard.

¶33 Paradoxically, the court's accurate jury instructions only served to reinforce the prosecutor's error. The court instructed the jury that, during closing arguments, "[w]hat the lawyers say is not evidence, but it may help you understand the law and the evidence." Thus, the jury understood that the prosecutor's erroneous reasonable-doubt comments might aid their understanding of the law. The prosecutor's comments' potential to mislead arises, therefore, not from any misstatement of the *Portillo* standard, but rather from the subtle conflating of "might be guilty" with "hav[ing] been persuaded by the evidence in the case beyond a reasonable doubt." This invited the jury to circumvent the proper standard while ostensibly applying it. Thus, even an astute jury may justifiably have believed it should convict if it was firmly convinced that Defendants might be guilty.

¶34 We concur in the thrust of Judge Eckerstrom's critique of the record: "[T]he [S]tate had a strong case that Murray 'might have' committed aggravated assault but a more tenuous case when evaluated by the standard of proof beyond a reasonable doubt"; the timing of the prosecutor's improper argument had a maximum impact on the jury; "the argument struck at the core of the defense case"; "the argument misleadingly seized on language found in the proper reasonable-doubt instruction"; and the argument was never corrected by objection or re-instruction. (*Easton C.*) *Murray*, 247 Ariz. at 464 ¶ 61 (Eckerstrom, J., dissenting in part). This analysis compels our conclusion: Absent the prosecutor's misstatement of the reasonable-doubt standard, uncorrected by the court, a reasonable jury could have plausibly and intelligently found Easton and Claudius not guilty of aggravated assault. Nevertheless, we must consider whether the court's jury instructions cured the prejudice emanating from the prosecutor's misstatement and obviated the need for a new trial.

¶35 In (*Claudius C.*) *Murray*, the court of appeals held that the court's accurate reasonable-doubt instruction and previous admonition to the jury not to treat the lawyers' arguments as evidence "cured" the

prosecutor's misstatement of the reasonable-doubt standard. 247 Ariz. at 596–97 ¶¶ 45–46. The (*Easton C.*) *Murray* panel concluded, albeit implicitly, that the presumption that juries follow instructions cured the prosecutor's error. *See* 247 Ariz. at 457–58 ¶¶ 33–34 (analogizing *State v. Acuna Valenzuela*, 245 Ariz. 197 (2018), to this case because, in *Valenzuela*, "the prosecutor's single, potentially burden-shifting statement, also offered in rebuttal argument, was insufficient to warrant reversal given that the court, the prosecutor and defense counsel had made multiple references to the State's burden and the jury had been properly instructed"). We disagree with both panels' conclusions.

¶36　　　　Although we acknowledge the continuing vitality of the presumption that juries follow their instructions, we disagree that the jury instructions, or any presumption that juries follow them, cured the prosecutor's error here. First, *Valenzuela* is readily distinguishable from this case. There, the defendant alleged that part of the prosecutor's closing argument improperly implied that the defendant bore some burden of proof. 245 Ariz. at 219 ¶ 87. We declined to find fundamental error because the prosecutor only came "close to attempting to shift the burden of proof." *Id.* at 219–20 ¶ 90. Here, by contrast, the prosecutor invited the jury to convict Defendants if they thought they "might be guilty." Additionally, the prosecutor in *Valenzuela* came close to slightly shifting the burden of proof on *one issue*, but here the prosecutor effectively lowered the burden for the *entire case*. Moreover, in *Valenzuela*, we did not address the seminal issue—whether jury instructions may cure misleading language the prosecutor insinuates into the correct jury instruction.

¶37　　　　Second, evaluating prejudice and its amenability to cure requires a court to examine the entire record—including jury instructions—*in context* with counsel's arguments. *See Escalante*, 245 Ariz. at 144 ¶ 31 ("In applying the 'could have' standard, an appellate court should examine the entire record, including the parties' theories and arguments as well as the trial evidence."); *see also State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989) ("Appellate courts do not evaluate jury instructions out of context. Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." (internal citation omitted)). Here, the prosecutor's offending statements were brief, comprising only six lines in the trial transcript. But the prosecutor's brief misstatement of the reasonable-doubt standard struck at the heart of Defendants' case and the bedrock principles underlying our justice system, thus infringing Defendants' Fifth and Sixth Amendment and due process rights, *see*

*Haymond*, 139 S. Ct. at 2376, and was made in rebuttal argument when the words were most impactful.

¶38 Third, although "[w]e have consistently stated our assumption that jurors follow such instructions," we note that a proper instruction is not a panacea for error in every case. *See State v. Carlson*, 237 Ariz. 381, 397 ¶ 61 (2015) ("This is not to say that all such errors are harmless so long as the trial court provides an appropriate instruction. Rather when, as here, the references were brief and indirect, a proper limiting instruction may suffice to ensure the jury will not use the statement improperly."); (*Easton C.*) *Murray*, 247 Ariz. at 458 ¶ 34 n.5 ("[W]e do not suggest that a proper reasonable-doubt instruction will always suffice to cure improper argument regarding the burden of proof.").

¶39 Here, a proper reasonable-doubt instruction is an inadequate remedy for fundamental, prejudicial error. The prosecutor did not merely misstate the proper reasonable-doubt standard; he provided the jury a logical roadmap to circumvent it while ostensibly following it. And, as discussed, *supra* ¶ 33, the court's instruction that "[w]hat the lawyers say is not evidence, but it may help you understand the law and the evidence" only reinforced the prosecutor's misstatement of the law because it encouraged the jury to rely on the misstatement to aid their understanding of the law. Finally, we are unpersuaded that the court's admonition to the jury not to treat the lawyers' arguments as evidence has any prophylactic or curative value where the prosecutor's comments mischaracterize the law rather than the evidence.

## CONCLUSION

¶40 The prosecutor's misstatement of the reasonable-doubt standard (1) constitutes error, (2) is fundamental both because it went to the foundation of the case and deprived Defendants of an essential right, and (3) is prejudicial because "a reasonable jury could have plausibly and intelligently returned a different verdict," and on this record, is not amenable to cure by the court's jury instructions or the presumption that the jury followed their instructions. Accordingly, we reverse the trial court's judgments of convictions and sentences, vacate the court of appeals' opinions, and remand these cases for new trials.