NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

NANCY A. LAKE, *Appellant*.

No. 1 CA-CR 22-0056
FILED 2-28-2023

Appeal from the Superior Court in Maricopa County
No. CR2020-136172-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Office of the Legal Advocate, Phoenix
By Kyle Kinkead
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

---

**C R U Z**, Judge:

¶1   Nancy A. Lake appeals her convictions and sentences for theft and fraudulent schemes and artifices. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2   We review the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Lake. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998). The trial evidence demonstrated the following.

¶3   While investigating possible instances of fraud, a special agent with the Office of the Inspector General for the Social Security Administration ("SSA") discovered Lake improperly used two social security numbers to obtain Medicare and other disability/supplemental income benefits. Lake was assigned the first number, -7663, in 1968 under her birth name, Kendig. When she successfully applied for social security number -0007 in 1988, Lake expressly affirmed she has not previously been issued any other social security number.

¶4   Lake subsequently obtained social security benefits under both numbers. Records for Lake's two active bank accounts indicated the United States Department of the Treasury ("Treasury Department") overpaid her approximately $70,000 based both on Lake's employment income, which she improperly failed to report to the SSA, and her inappropriate use of the two social security numbers. When the investigator subsequently interviewed Lake, she told him, "I knew you guys would find out one day, . . . there was a paper trail."

¶5   Alleging the SSA as the victim, the State charged Lake with one count each of theft and fraudulent schemes and artifices, both class two felonies.[1] The jury returned guilty verdicts. The superior court suspended

---

[1]   Count 3, forgery, was dismissed with prejudice at trial.

imposition of sentence and placed Lake on four years' supervised probation. Lake timely appealed, and we have jurisdiction pursuant to Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**DISCUSSION**

I.      Sufficiency of the Evidence

**¶6**          According to Lake, the evidence established the monetary benefits she obtained were "the property of" the Treasury Department, not the SSA as charged in the information. Lake thus asserts insufficient evidence supports her theft conviction, and she "was found guilty of a completely different crime than that which [she] was charged."

**¶7**          Lake's argument fails as a matter of law. Assuming, without deciding, the record supports Lake's characterization of the evidence, her argument presumes a victim's title to property is an essential element to the crime of theft. It is not. As relevant here, a "person commits theft if, without lawful authority, the person knowingly . . . [c]ontrols *property of another*." A.R.S. § 13-1802(A)(1) (emphasis added). Thus, to obtain a conviction under § 13-1802(A)(1), the State is not required to prove a particular victim owned the stolen property; the State must only show the accused knowingly controlled property that was not hers.[2] *See State v. Noe*, 93 Ariz. 373, 375 (1963) ("[I]t is not a defense to larceny that title to property is in one other than the person from whom it is taken."); *see also State v. Kalauli*, 243 Ariz. 521, 524, ¶¶ 7-8 (App. 2018) (describing how contemporary theft statute is rooted in pre-statehood larceny and similar common law offenses).

**¶8**          The distinction as to whether the Treasury Department or the SSA "owned" the funds that Lake ultimately controlled is immaterial for purposes of evaluating the evidence supporting her theft conviction. And Lake does not argue the evidence shows she was lawfully entitled to the overpaid benefits. Sufficient evidence supports Lake's conviction.

---

[2]     A theft conviction also requires the State to prove the defendant intended "to deprive the other person of such property." A.R.S. § 13-1802(A)(1). Lake does not argue the State failed to do so here.

II.     Prosecutorial "Misconduct"[3]

**¶9**          Lake argues the prosecutor erred during rebuttal closing argument by stating, "The presumption of innocence is at the beginning of the case when you have not heard the evidence."  Because Lake did not object to the statement at trial, we review for fundamental error, which requires Lake to prove either error and resulting prejudice, or that the error "was so egregious that [s]he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018).

**¶10**          Considered in isolation, the challenged statement appears to erroneously imply the presumption of innocence abates when trial begins and the State introduces evidence.  *See Bush v. State*, 19 Ariz. 195, 203 (1917) ("The presumption of innocence remains throughout the case and until it is finally submitted to the jury and by the return of their verdict the defendant is found guilty."); *but see State v. Conley*, 2 CA-CR 2021-0111, 2023 WL 329233 at *6, ¶¶ 29-30 (App. Jan. 20, 2023) (finding prosecutor did not err by stating during closing arguments that, although the defendant "started out with the presumption of innocence[, w]e are no longer there").

**¶11**          Lake fails to establish, however, that the error—if any— prejudiced her or was so egregious that her trial was unfair.  The trial court repeatedly instructed the jury before deliberations that Lake was presumed "innocent until [the State has] proven guilt[] beyond a reasonable doubt," which required the jurors to be "firmly convinced of the Defendant's guilt." The court also admonished the jury not to consider counsels' arguments as evidence.   Because we must presume the jury followed the court's instructions, they rectified whatever error occurred.  *See Conley*, 2 CA-CR 2021-0111, at *6, ¶ 31; *see also State v. Morris*, 215 Ariz. 324, 336-37, ¶ 55 (2007) (citing cases that hold trial court's instructions cured improper closing argument).

---

[3]     As our supreme court has explained, the term "prosecutorial misconduct" broadly encompasses any conduct that violates a defendant's constitutional rights and "sweeps in prosecutorial conduct ranging from inadvertent error or innocent mistake to intentional misconduct."  *State v. Murray*, 250 Ariz. 543, 548, ¶ 12 (2021) (quoting *In re Martinez*, 248 Ariz. 458, 469, ¶ 45 (2020)).  Consistent with the court's directive in *Martinez*, we refer to prosecutorial "error" because Lake has not expressly alleged intentional misconduct or an ethical violation on the prosecutor's part.  *See In re Martinez*, 248 Ariz. at 470, ¶ 47.

## CONCLUSION

¶12     We affirm.

