NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSHUA JAMES HOOVER, *Appellant*.

No. 1 CA-CR 23-0537

FILED 08-20-2024

Appeal from the Superior Court in Maricopa County
No. CR2023-000017-001
The Honorable Michael S. Mandell, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

**F U R U Y A**, Judge:

**¶1**　　　　Joshua James Hoover appeals his convictions for disorderly conduct (count one) and assault (count two). Hoover argues the prosecutor's closing argument denied him a fair trial. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　In January 2022, Hoover attempted to make a transaction at the customer service desk of a Phoenix Walmart. When staff informed him the store could not accept his I.D., he became agitated and an asset protection officer, P.W., was called to assist. Hoover insisted the store accept his I.D. As P.W. turned to leave, she felt "something wet" hit her and turned to see Hoover had thrown a drink at her. She told Hoover to leave the store, but he once again insisted the store accept his I.D.

**¶3**　　　　Hoover left the service desk and began wandering the store as P.W. called police. P.W. and another employee, A.V., followed Hoover. Once they reached a dead end, Hoover turned around, allegedly holding an unfolded knife. P.W. informed police that A.V. saw Hoover holding a knife. P.W. and A.V. then followed Hoover back through the store to the entrance. As Hoover neared the exit, he grabbed a drink can, turned, and prepared to throw it at P.W. A.V. then tackled Hoover and restrained him until police arrived.

**¶4**　　　　Upon arrival, a police officer arrested Hoover and searched him. The officer found a black and yellow folding knife in his jacket pocket. The knife was in the "open position," and A.V. confirmed the knife was the same one Hoover brandished in the store. The officer asked A.V. to make a copy of the surveillance footage, which he did, but police never retrieved this recording.

**¶5**　　　　At trial, the jury heard testimony from P.W., A.V., the arresting officer, and a customer who witnessed the initial altercation between Hoover and P.W. Hoover requested a *Willits* instruction based on the State's failure to produce the surveillance footage, which the court

granted. *See State v. Willits*, 96 Ariz. 184 (1964). In addition to the *Willits* instruction, the court also instructed the jury not to consider attorney statements as evidence and not to draw negative inferences from Hoover's decision not to testify.

**¶6** The jury convicted Hoover of disorderly conduct (count one) and assault (count two) and found the state proved three aggravating circumstances. The court sentenced Hoover to 1.75 years' imprisonment for count one plus 30 days for count two.

**¶7** We have jurisdiction over Hoover's timely appeal under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶8** On appeal, Hoover asserts two statements made during the State's closing arguments constitute prosecutorial error.[1] First, while explaining why police never retrieved the copied surveillance footage, the prosecutor stated "the Phoenix Police Department is down anywhere from 600 to a thousand officers. They already know they are not always able to respond to scenes as fast as they should." Hoover argues this statement was prosecutorial vouching because it referenced evidence not in the record. Second, Hoover argues the prosecutor improperly commented on his decision not to testify when he told the jury that defense counsel could not "give answers, because the only answers that fit all of the evidence are that the defendant is guilty."

**¶9** Because Hoover did not object to either statement at trial, we review only for fundamental error. *State v. Murray*, 250 Ariz. 543, 548 ¶ 14 (2021). The three-pronged fundamental error test requires (1) "determining whether trial error exists," (2) deciding "whether the error is fundamental," and (3) whether there was resulting prejudice to the defendant. *Id.* "Error is

---

[1] In Arizona, "prosecutorial error" is differentiated from "prosecutorial misconduct," which implicates ethical dimensions. *See State v. Murray*, 250 Ariz. at 548 ¶ 12 (explaining "courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation."). Hoover alleges misconduct, but the record does not establish any non-speculative ethical violations or intentional violations of Hoover's constitutional rights. We therefore examine his argument as "prosecutorial error."

fundamental if it goes to the foundation of a case, takes away an essential right, or is so egregious that a defendant could not have received a fair trial." *Id.* Proving prejudice requires the defendant show that if not for the fundamental error, "a reasonable jury . . . could have reached a different [verdict]." *Id.* (quoting *State v. Escalante*, 245 Ariz. 135, 144 ¶ 29 (2018).

**I.    The Prosecutor's Comment About the Phoenix Police's Failure to Retrieve the Surveillance Video Did Not Prejudice Hoover.**

**¶10**        Prosecutorial vouching occurs when the State references additional evidence outside the record. *State v. Johnson*, 247 Ariz. 166, 204 ¶ 157 (2019). True, the State's comment called attention to the Phoenix Police Department's staffing difficulties and was not based on any admitted evidence or any reasonable inference therefrom. In this sense, we agree the prosecutor's comment in that regard was error. But the error was neither fundamental nor prejudicial.

**¶11**        First, the statement was made to explain why Phoenix Police did not retrieve the surveillance footage and was not directly related to any key fact or dispositive issue in the case. Thus, the prosecutor's statement did not go to the foundation of the case. *See Escalante*, 245 Ariz. at 141 ¶ 18 ("An error . . . goes to the 'foundation of a case' if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures."). Second, immediately after the statement, the prosecutor emphasized to the jury that they were instructed to consider only evidence in the record. Third, the jury received a *Willits* instruction, permitting it to draw an inference in Hoover's favor regarding the missing footage. Fourth, the jury was instructed not to consider the attorneys' statements as evidence. Presuming the jury followed the instructions given, *State v. Browning in & for Cnty. of Pima*, 256 Ariz. 511, 514 ¶ 8 (App. 2023), we conclude the statement did not deny an essential right or a fair trial.

**II.    The Prosecutor's Rebuttal of the Defense's Argument Did Not Improperly Comment on Defendant's Choice to Not Testify and Did Not Prejudice Hoover.**

**¶12**        "A prosecutor is prohibited by the Fifth Amendment, its Arizona counterpart, Ariz. Const. art. 2, § 10, and A.R.S. § 13-117(B) from directly or indirectly bringing to the jury's attention that the defendant did not testify." *State v. Thompson*, 252 Ariz. 279, 299 ¶ 77 (2022). "Prosecutors are given 'wide latitude'" in fashioning their closing arguments. *Murray*, 250 Ariz. at 549 ¶ 18 (quoting *State v. Goudeau*, 239 Ariz.

421, 466 ¶ 196 (2016)). "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *State v. Acuna Valenzuela*, 245 Ariz. 197, 221–22 ¶ 104 (2018) (quoting *State v. Rutledge*, 205 Ariz. 7, 13 ¶ 33 (2003), supplemented, 206 Ariz. 172 (2003)). We consider the entire record and the totality of the circumstances in which the statement is made. *State v. Lapan*, 249 Ariz. 540, 549 ¶ 28 (App. 2020) (quoting *Rutledge*, 205 Ariz. at 13 ¶ 33).

**¶13** Here, responding to Hoover's argument that the absent surveillance footage would have exonerated him, the prosecutor said:

> What the defense wants to show — to claim is a real possibility that the defendant is not guilty is in fact more evidence that leaves you firmly convinced of his guilt, because they can pitch the question, what about this? What about this? What about this? They can't give answers, because the only answers that fit all of the evidence are that the defendant is guilty.

Citing *State v. Ramos*, 235 Ariz. 230 (App. 2014), Hoover asserts this statement improperly directed the jury's attention to his decision not to testify because the only evidence the defense did not present was Hoover's own testimony. Not so.

**¶14** The *Ramos* case is distinguishable and unavailing. During closing argument in *Ramos*, a prosecutor said that the defendants were "never gonna get on the stand," and instead were going to "try to poke holes in whatever evidence the State has." *Id.* at 235 ¶ 12. Unlike in *Ramos*, the prosecutor here did not state that Hoover was "never gonna get on the stand," or anything akin to that sentiment.

**¶15** Examining the prosecutor's statement in context, a jury would not naturally and necessarily perceive it to be a comment on Hoover's failure to testify. *See Acuna Valenzuela*, 245 Ariz. at 221 ¶ 104. The prosecutor made no reference to Hoover's decision not to testify, nor does any fair inference from the statement compel that perception. Rather, the statement invites jurors to consider the totality of the evidence, submits that the defense's argument concerning the missing footage is inadequate in the face of that evidence, and suggests the ultimate conclusion of Hoover's guilt. These are all permissible functions of a closing argument. *See State v. Allen*, 253 Ariz. 306, 338 ¶ 95 (2022) (in closing argument, prosecutors may properly "summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate

conclusions."). Thus, the statement is not improper, and we need not address whether Hoover was prejudiced by it. *See Freeport McMoRan Corp. v. Langley Eden Farms, LLC*, 228 Ariz. 474, 478 ¶ 15 (App. 2011) ("[W]e do not issue advisory opinions or decide unnecessary issues.").

## CONCLUSION

¶16        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV