NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RODRIGO ZAMORA VALENZUELA, *Appellant.*

No. 1 CA-CR 24-0641

FILED 12-03-2025

Appeal from the Superior Court in Maricopa County
No. CR2022-116415-001
The Honorable Geoffrey H. Fish, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph A. Newberg, II
*Counsel for Appellee*

Maricopa County Office of the Legal Defender, Phoenix
By Scott L. Boncoskey
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

---

**P E R K I N S**, Judge:

**¶1**          Rodrigo Zamora Valenzuela ("Zamora") appeals his convictions and sentences for first-degree murder, attempted second-degree murder, and aggravated assault with a deadly weapon. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**          We view the facts in the light most favorable to upholding the jury's verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). For privacy purposes, we refer to the victims and witnesses by pseudonyms.

**¶3**          On May 5, 2022, Zamora awoke in the early morning hours at a friend's house, used methamphetamine, and smoked marijuana. Later that morning, he and another friend drove to the Pull N' Save salvage yard ("the junkyard") to find parts for a vehicle.

**¶4**          Once inside the junkyard, Zamora returned to the vehicle to retrieve a knife and some tools he had left behind. At some point after returning to the junkyard, Zamora encountered the first victim, James. A fight broke out between them, and Zamora stabbed James 13 times, killing him.

**¶5**          After the fight, three junkyard workers—Mariah, Glenda, and Gabriel—came out to investigate. Zamora approached and stabbed Mariah as she dialed 911. Gabriel defended Mariah and Glenda from Zamora with a prybar, but at some point, Zamora took the prybar and hit Gabriel with it. Several customers then stepped in and subdued Zamora until police arrived and arrested him.

**¶6**          The State charged Zamora with first-degree murder for the death of James, attempted second-degree murder and aggravated assault with a deadly weapon for his attack on Mariah, and two counts of aggravated assault with a deadly weapon for his attacks on Gabriel.

2

Zamora argued self-defense at trial. He testified that James started the fight after the two exchanged insults. But the State introduced Zamora's interview with detectives, in which Zamora claimed that he and James rushed each other at the same time.

¶7        Following a 12-day trial, the jury found Zamora guilty as charged. The superior court sentenced Zamora to consecutive sentences of natural life, 10.5 years, and 7.5 years, and two concurrent sentences of 7.5 years. Zamora timely appealed, and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

¶8        Zamora raises two issues on appeal, contending that (1) the court erred by denying his August 2023 motion to substitute counsel, and (2) the prosecutor erred by misstating the objective standard for self-defense in its closing argument.

### I.      The August 2023 motion for substitution of counsel

¶9        Zamora first argues the superior court violated his Sixth Amendment right to counsel by improperly denying his August 2023 motion to substitute counsel, or in the alternative, by failing to hold an adequate inquiry into his complaint.

¶10        In May 2023, Zamora filed a handwritten motion for substitution of counsel. It alleged that Zamora had not yet received discovery and that counsel was ignoring his requests for discovery "because he is not an American Citizen and believes he has no rights." It also alleged counsel was rude, unprofessional, did not listen, and "storm[ed] out of legal visits like a child."

¶11        The court held a hearing on the motion in June 2023, at which Zamora stated that he did not know what his motion contained because someone else wrote it for him in English, and he only spoke Spanish. Zamora told the court his only complaints with counsel were that he had not yet received discovery and that he and counsel "couldn't come to agreements." The court denied his motion and told Zamora to wait until after an upcoming settlement conference to reconsider.

¶12        Zamora "re-urged" his motion before a different judge at an August 2023 status conference following the settlement conference. Zamora again disavowed his handwritten motion and orally requested to proceed on different grounds.

¶13        The court asked Zamora why he wanted a new attorney, and he stated, "Because we never come to any agreements between us and we're not understanding each other." After follow-up, Zamora reiterated, "[W]e are unable to come to any agreements."

¶14        Counsel then told the court they were "struggling to get over some of the issues," but would not get into specifics. He described a "barrier" that "doesn't ever seem to go away," and stated their relationship would "get[] to a point where it seems better" and then "regress[] drastically." He also said he and Zamora were "cordial" with each other, and "[i]t's not like we're arguing." The superior court found this insufficient to justify changing counsel and denied the motion.

¶15        "A trial court's decision to deny the request for new counsel will not be disturbed absent an abuse of discretion." *State v. Cromwell*, 211 Ariz. 181, 186, ¶ 27 (2005). The court abuses its discretion when its reasoning is "clearly untenable, legally incorrect, or amount[s] to a denial of justice." *State v. Riley*, 248 Ariz. 154, 167, ¶ 7 (2020). Both the United States and Arizona Constitutions guarantee criminal defendants the right to representation by counsel. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. Defendants have a right to competent counsel but not to any particular counsel, A.R.S. § 13–114; *State v. LaGrand*, 152 Ariz. 483, 486 (1987), nor "to a meaningful relationship with his or her attorney." *Cromwell*, 211 Ariz. at 186, ¶ 28.

¶16        To protect this constitutional right, the superior court "has the duty to inquire as to the basis of a defendant's request for substitution of counsel." *State v. Torres*, 208 Ariz. 340, 343, ¶ 7 (2004). The nature of this inquiry depends on the nature of the defendant's request. *Id.* at ¶ 8. The superior court inquires first into whether "an irreconcilable conflict or a completely fractured relationship between counsel and the accused" exists. *Cromwell*, 211 Ariz. at 186, ¶ 29. Such conflicts require a change of counsel. *Id.* To establish irreconcilable differences, a defendant must allege more than personality conflicts or strategic differences. *Id.* at 187, ¶ 30. In contrast, general complaints about strategic differences may not require a formal hearing or evidentiary proceeding, whereas sufficiently specific, factually based allegations require a hearing into the request. *Id.* If the defendant makes specific allegations, "the trial court should elicit specific on-the-record responses to the allegations from defense counsel." *State v. Hernandez*, 232 Ariz. 313, 320, ¶ 31 (2013).

¶17        When a defendant moves to substitute counsel, and the conflict is reconcilable, the court considers the conflict alongside the

*LaGrand* factors: (1) "whether new counsel would be confronted with the same conflict;" (2) "the timing of the motion;" (3) "inconvenience to witnesses;" (4) "the time period already elapsed between the alleged offense and trial;" (5) "the proclivity of the defendant to change counsel;" and (6) the "quality of counsel." *LaGrand*, 152 Ariz. at 486–87; *Riley*, 248 Ariz. at 169, ¶ 19. *But see Torres*, 208 Ariz. at 344, ¶ 15 (quality of counsel is not considered in most substitution requests because it is more relevant to ineffective assistance of counsel claims). These factors "balance the rights and interests of the defendant against the public interest in judicial economy, efficiency and fairness." *Cromwell*, 211 Ariz. at 187, ¶ 31.

**¶18**     Zamora now asserts that he had irreconcilable differences and a complete breakdown of communication with his counsel, but he failed to assert those reasons in his August 2023 oral motion. Zamora disavowed his handwritten motion, leaving only generalized complaints about misunderstandings and disagreements. Although his counsel described a "barrier" that "doesn't ever seem to go away," counsel also described their relationship as "cordial" and up and down. Such vague assertions do not constitute an irreconcilable conflict nor a total breakdown of the relationship. Therefore, we must examine whether the court abused its discretion as to the *LaGrand* factors.

**¶19**     The court gave no explicit reasons for denying the motion and did not refer to the *LaGrand* factors, but we may affirm on any basis in the record. *See Riley*, 248 Ariz. at 169, ¶ 21. Certainly, some factors weighed in Zamora's favor. The record shows no evidence of conflicts with other attorneys in his case. Witness interviews had not yet begun, and Zamora did not demonstrate a proclivity to change counsel.

**¶20**     But reasonable evidence supports the superior court's denial. At the time of the August 2023 motion, trial was scheduled for January 2024. Zamora's counsel had spent 15 months working on Zamora's case, but a new attorney would only have five months to prepare for a complex murder trial.

**¶21**     Zamora also argues the court abused its discretion by failing to conduct a more exacting inquiry. He contends the court should have held an ex parte hearing to inquire into his complaints based on his handwritten motion, his counsel's refusal to elaborate on their issues, and the language barrier. But Zamora explicitly disavowed his handwritten motion and cannot now rely on it. Zamora and his counsel "effectively foreclosed further inquiry" by refusing to elaborate on their issues and not requesting an ex parte hearing. *Riley*, 248 Ariz. at 169, ¶ 18. And Zamora failed to

develop any argument regarding the language barrier, so we decline to address it. *See State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004). The court adequately inquired into Zamora's complaints on the record and found Zamora's reasons for substitution insufficient. On this record, the superior court did not abuse its discretion.

## II.    The State's statements in closing argument

**¶22**        Zamora next argues the prosecutor erred by misstating the objective standard for self-defense in his closing argument, thus leading the jury to believe it could consider evidence of Zamora's subjective state of mind, effectively lowering the State's burden of proof.

**¶23**        At trial, the State read Zamora's police interview into evidence. Zamora told the detective he retrieved his knife from the vehicle because the other customers made him paranoid. He said that God had given him the knife to protect himself. Zamora described James as a "demon" and a "vampire" who would not fall. He told the detective that he could not leave James alive because James was "gonna get stronger," and he would not "be able to beat [James]." Zamora told the detective that the demon switched from person to person and he "may have attacked" Mariah too because she was "evil." A voice also told him not to leave Gabriel alive because Gabriel was "stronger" than James.

**¶24**        Zamora told a different story at trial. He testified that James attacked him first by hitting him in the head with a "very heavy" tire rim, and only then did he stab James. Three welded-together tire rims covered in untested blood were found at the scene. Zamora testified he only remembered "hit[ting] a shadow," not stabbing Mariah, and that he hit Gabriel with the prybar to defend against Gabriel.

**¶25**        The State rebutted Zamora's testimony with evidence that the tire rims weighed over 100 pounds and could not be lifted by a single person.

**¶26**        During the State's closing argument, the prosecutor displayed a slide which, according to the parties' briefs, read, "Defendant's impairment by methamphetamine means he wasn't acting reasonably." The relevant exhibit in the record is a corrupted digital file, but because neither party disputes the wording on the slide, we treat the parties' briefs as an implied stipulation that the language is accurate.

**¶27**        Immediately after displaying the slide, the prosecutor made the following statements:

> We know the defendant was impaired by methamphetamine. We know he … hadn't quite completed his first half-life of the methamphetamine that he used that day. We know that methamphetamine can cause hallucinations, paranoia, aggression. It triggers that fight or flight receptor [the expert witness] talked about. And he believed that there was a demon in [James'] body and that it jumped from [James] to [Mariah]. That's not reasonable. So as you look, as you go through those justification instructions, look for that. Was he behaving reasonably that day? The evidence proves he was not. And it's all pegged around reasonableness. If you don't believe he was acting reasonably, then he cannot be justified.

Zamora objected on grounds that the prosecutor misstated the objective standard for self-defense. The court overruled Zamora's objections. Because Zamora objected to the prosecutor's statements, we review for harmless error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).

**¶28**　　　　"To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Murray*, 250 Ariz. 543, 548, ¶ 13 (2021) (cleaned up). We will reverse if "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [Zamora] a fair trial." *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005); *see Murray*, 250 Ariz. at 548, ¶ 12 ("Prosecutorial misconduct broadly encompasses any conduct that infringes on a defendant's constitutional rights . . . from inadvertent error [and] innocent mistake to intentional misconduct." (cleaned up)).

**¶29**　　　　Prosecutors have wide latitude in presenting closing arguments but may not misstate the law. *Murray*, 250 Ariz. at 549, ¶ 18.

**¶30**　　　　Under Arizona Revised Statutes Section 13-405(A)(2), a person is justified in using deadly physical force "when and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force." A person is generally not justified in using deadly physical force if the person provoked the

7

encounter. A.R.S. § 13-404(B)(3). When a defendant is entitled to a self-defense instruction, the absence of self-defense is another element the State must prove beyond reasonable doubt. *State v. Carson*, 243 Ariz. 463, 466, ¶ 11 (2018).

**¶31** The reasonable person standard is "purely objective" and does not account for the "defendant's own belief about the necessity of force." *State v. Haywood*, 257 Ariz. 472, 478, ¶ 20 (App. 2024). It does not rely on whether the defendant is "generally a reasonable person," nor does it rely on the "defendant's subjective state of mind." *Id.* The only question is "whether a reasonable person in the defendant's circumstances would have believed that physical force was immediately necessary to protect himself." *State v. King*, 225 Ariz. 87, 90, ¶ 12 (2010) (cleaned up).

**¶32** Even assuming the prosecutor erred by suggesting the jury could find that Zamora did not act reasonably based on his methamphetamine use and belief the victims were demons, Zamora has not shown a "reasonable likelihood" that the error "could have affected the jury's verdict." *Anderson*, 210 Ariz. at 340, ¶ 45. First, the court gave the correct self-defense instruction here, which we presume the jury followed. *See State v. Strong*, 258 Ariz. 184, 212, ¶ 124 (2024). Second, there was overwhelming evidence that Zamora attacked all three victims unprovoked. The evidence shows he retrieved his knife from his vehicle because he was paranoid. He told police that James and Gabriel were demons, and that he could not leave them alive because they would grow stronger.

**¶33** There was no evidence Zamora was justified in attacking. Zamora did not deny stabbing Mariah as she called 911 and testified only that he could not remember doing so. And the State provided uncontroverted evidence that Zamora provoked Gabriel's attacks by stabbing Mariah. "An essential element of self-defense is the accused's freedom from fault in provoking the difficulty that gives rise to the use of the force." *State v. Zamora*, 140 Ariz. 338, 341 (App. 1984).

**¶34** The only evidence Zamora provided that he was justified in attacking James was his own testimony. Zamora admitted he had been impaired by methamphetamines and marijuana at the time of the offense. And though Zamora testified he only stabbed James once James hit him with a tire rim, Zamora did not say that during his police interview, and the State provided evidence that the rim in question could not be lifted by a single person.

¶35 Though the jury could not consider evidence of Zamora's impairment and state of mind to find he was unreasonable, it could use that evidence to discount Zamora's credibility as a witness and find that Zamora was the aggressor. Indeed, Zamora acknowledges that the evidence was admitted for those purposes.

¶36 There is no reasonable likelihood the prosecutor's statements could have altered the jury's verdict. Any error was harmless.

**CONCLUSION**

¶37 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR